1   Richard Gibson (State Bar No. 111535)
    **GIBSON LAW PC**
2   Warner Center, Tower Five
    21800 Oxnard Rd. Ste. 310
3   Woodland Hills, CA 91367
    Tel. 818-716-7950
4   Fax  818-716-7995
    E-mail: RickGibsonLaw@gmail.com
5   Website: www.CalRealtyLaw.corp
    Attorney for JNR ENTERPRISES, LLC
6

7

FILED

MAR 1 8 2010

CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY:                     Deputy Clerk

8               **UNITED STATES BANKRUPTCY COURT**

9               **CENTRAL DISTRICT OF CALIFORNIA**

10              **SAN FERNANDO VALLEY DIVSION**

11

12                                  )   Chapter 11
                                    )   **CASE NO.:** # 1:09-bk-26742-MT
13  IN RE:                          )
                                    )
14                                  )   **DISCLOSURE STATEMENT TO**
                                    )   **DEBTOR'S ORIGINAL CHAPTER 11**
15  JNR ENTERPRISES, LLC            )   **PLAN PROPOSED ON MARCH 9,**
                                    )   **2010**
16      Chapter 11 debtor-in-possession )
                                    )   DATE: MAY 24, 2010
17                                  )   TIME: 10 A.M.
                                    )   CTRM: 302
18                                  )
                                    )
19                                  )
                                    )
20                                  )
                                    )
21                                  )
                                    )
22                                  )

23  _____        **ORIGINAL**

24

25

1

# TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **4**

    A.   Purpose of This Document . . . . . . . . . . . . . . . . . . . . . . 4

    B.   Deadlines for Voting and Objecting; Date of Plan

        Confirmation Hearing. 5

        1.   Time and Place of the Confirmation Hearing   . . . . . 5

        2.   Deadline for Voting For or Against the Plan . . . . . . . 5

        3.   Deadline for Objecting to the Confirmation of the Plan   5

        4.   Identity of Person to Contact for More . . . . . . . . . . . 5

        5.   Information Regarding the Plan . . . . . . . .   5

    C.   Disclaimer . . . . . . . . . . . . . . . . . . . .   6

II.  BACKGROUND   . . . . . . . . . . . . . . . . . . .   6

    A.   Description and History of the Debtor' Business . . . . . .   6

    B.   Principals/Affiliates of Debtor's Business . . . .   6

    C.   Management of the Debtor Before and After the   Bankruptcy . .   6

    D.   Events Leading to Chapter 11 Filing . . . . . . .   6

    E.   Significant Events . . . . . . . . . . . . . . . . . . .   7

        1.   Bankruptcy Proceedings . . . . . . . . . . .   7

        2.   Other Legal Proceedings . . . . . . . . . . .   7

        3.   Actual and Projected Recovery of Preferential

           or Fraudulent Transfer 4

        4.   Procedures Implemented to Resolve Financial Problems . .   7

        5.   Current and Historical Financial Conditions   . . . .   8

III. SUMMARY OF THE PLAN OF REORGANIZATION . . . . . . . . .   8

    A.   What Creditors and Interest Holders Will Receive Under the

   Proposed Plan 5

B. Unclassified Claims . . . . . . . . . . . . . . . . 8

  1. Administrative Expenses . . . . . . . . . . 8

  2. Priority Tax Claims . . . . . . . . . . . . 9

C. Classified Claims and Interests . . . . . . . . 10

  1. Classes of Secured Claims . . . . . . . . . 11

  2. Classes of Priority Unsecured Claims . . . . 11

  3. Classes of General Unsecured Claims . . . . . 12

  4. Class(es) of Interest Holders . . . . . . . 12

D. Means of Effectuating the Plan . . . . . . . . . 13

  1. Funding for the Plan . . . . . . . . . . . . 13

  2. Post-Confirmation Management . . . . . . . . 13

  3. Disbursing Agent . . . . . . . . . . . . . . 13

E. Risk Factors . . . . . . . . . . . . . . . . . . 13

F. Other Provisions of the Plan . . . . . . . . . . 13

  1. Executory Contracts and Unexpired Leases . . 13

  2. Changes in Rates Subject to Regulatory Approval . 14

  3. Retention of Jurisdiction . . . . . . . . . . 14

G. Tax Consequences of Plan . . . . . . . . . . . . 14

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES** . . . . . . . **15**

A. Who May Vote or Object . . . . . . . . . . . . . 15

  1. Who May Object to Confirmation of the  Plan . . 15

  2. Who May Vote to Accept/Reject the Plan . . . 16

    a. What is an Allowed Claim/Interest . . . 16

    b. What Is an Impaired Claim/Interest . . . 16

  3. Who is Not Entitled to Vote . . . . . . . . 16

4.   Who Can Vote in More Than One Class . . . . . 17

5.   Votes Necessary to Confirm the Plan . . . . . 17

6.   Votes Necessary for a Class to Accept the Plan  ... . 17

7.   Treatment of Nonaccepting Classes . . . . . . 17

8.   Request for Confirmation Despite Nonacceptance by Impaired

Class(es) . . . . . . . . . . . . 18

B.   Liquidation Analysis . . . . . . . . . . . . . . . 18

C.   Feasibility . . . . . . . . . . . . . . . . . . 21

V.   EFFECTS OF CONFIRMATION OF PLAN . . . . . . . . . . . . 23

A.   Discharge . . . . . . . . . . . . . . . . . . 23

B.   Revesting of Property in the Debtor . . . . . . . 23

C.   Modification of Plan . . . . . . . . . . . . . 23

D.   Post-Confirmation Status Report . . . . . . . . . 23

E.   Quarterly Fees . . . . . . . . . . . . . . . . 23

F.   Post-Confirmation Conversion/Dismissal . . . . . . 24

G.   Final Decree . . . . . . . . . . . . . . . . 24

VI.   SUPPORTING DECLARATIONS . . . . . . . . . . . . . . 25

DECLARATION OF JAY RAHMANY

## I.   INTRODUCTION

JNR Enterprises, LLC (hereinafter "JNR") is the Debtor in a Chapter 11 bankruptcy case. On December 11, 2009, JNR commenced a bankruptcy case by filing a voluntary Chapter 11 petition under the United States Bankruptcy Code ("Bankruptcy Code"), 11 U.S.C. § 101 et seq. This document is Disclosure Statement to the Original Chapter 11 Plan ("Plan") proposed by JNR-("Plan Proponent"). THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE ENCLOSED PLAN.

This is a reorganizing plan.  In other words, the Proponent seeks to reorganize its business so that it can pay creditors substantially more than they would receive in a liquidation. First, the Plan reduces the amount of secured debt payments. Second, the Plan brings in new capital from three sources: (a) $370,000 from a new investor; (b) repairs and other assistance from an essential group of creditors who are working with JNR to reorganize; and (c) recovery from major litigation which is pending.  The Effective Date of the proposed Plan is July 1, 2010.

### A.   Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:

(1)   WHO CAN VOTE OR OBJECT,

(2)   WHAT THE TREATMENT OF YOUR CLAIM IS (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOUR CLAIM WOULD  RECEIVE IN LIQUIDATION,

(3)   THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY,

(4)   WHAT THINGS THE COURT WILL LOOK AT TO DECIDE WHETHER OR NOT TO CONFIRM THE PLAN,

(5)   WHAT IS THE EFFECT OF CONFIRMATION, AND

(6)   WHETHER THIS PLAN IS FEASIBLE.

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

The Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The Bankruptcy Court("Court") has approved this document as an adequate Disclosure Statement, containing enough information to enable parties affected by the Plan to make an informed judgment about

the Plan. Any party can now solicit votes for or against the Plan.

B.    Deadlines for Voting and Objecting; Date of Plan
Confirmation Hearing

THE COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT. IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

1.    Time and Place of the Confirmation Hearing

The hearing where the Court will determine whether or not to  confirm the Plan will take place on      11     , at {A.M./P.M.}, in Courtroom     , {Insert Courthouse Name}, {Insert Full Court Address, City, State, Zip Code}.

2.    Deadline For Voting For or Against the Plan

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot in the enclosed envelope to:

Richard Gibson    .

GIBSON LAW PC

21800 Oxnard Street, Suiter 310

Woodland Hills, CA 91367

Your ballot must be received by     _____     or it will not be counted.

3.    Deadline For Objecting to the Confirmation of the Plan
Objections to the confirmation of the Plan must be filed

with the Court and served upon Richard Gibson, Gibson Law PC,

21800 Oxnard Street, Suite 310, Woodland Hills, CA 91367      by

_____      .

    4.   Identity of Person to Contact for More Information

       Regarding the Plan

Any interested party desiring further information about the

Plan should contact

Richard Gibson

GIBSON LAW PC

21800 Oxnard Street, Suiter 310

Woodland Hills, CA 91367

C.   Disclaimer

    The financial data relied upon in formulating the Plan is

based on  the debtor's books and records and financial

projections.   The information contained in this Disclosure

Statement is provided by  Jay Rahmany. The Plan Proponent

represents that everything stated in the Disclosure Statement is

true to the Proponent's best knowledge.   The Court has not yet

determined whether or not the Plan is confirmable and makes no

recommendation as to whether or not you should support or oppose

the Plan.

**II.**

**BACKGROUND**

A.   *Description and History of the Debtor's Business*

1    JNR is a limited liability company, whose business is

2   owning and operating real estate.  JNR is wholly owned by Jay

3   Rahmany.  Mr. Rahmany is a computer software engineer by

4   training.  He worked for Northrup.  He made a large amount of

5   money in the fabric industry.  In 2006, Mr. Rahmany had $5

6   million in cash from his fabrics business.

7    With this money, Mr. Rahmany established JNR, and purchased

8   three buildings.  First, JNR purchased an office building in

9   Houston, Texas, known as the Cornerstone Regency.  The street

10  address of that building is 14511 Falling Creek Drive, Houston,

11  Texas 77014.  Second, JNR purchased an apartment building in Van

12  Nuys, California, whose street address is 8220 Langdon Avenue,

13  Van Nuys, California 91406.  Third, JNR  purchased an apartment

14  building whose street address is 15526 Chase Street, North

15  Hills, California 91343 (the "Chase Street Property.")

16   JNR's undoing was the Chase Street Property.  Mr. Rahmany

17  thought that this was a good purchase.  A reputable broker,

18  Milan Properties, Inc, represented JNR in the purchase

19  transaction.  The seller, ABBB Investment, is a large and

20  experienced real estate investor, which was represented by the

21  nationally known brokerage firm, Marcus & Millichap.  With all

22  of these high-profile professionals involved, Mr. Rahmany

23  believed that he was receiving accurate information about the

24  Chase Street Property.

25

1    Unfortunately, Mr. Rahmany was not given accurate

2  information about the Chase Street Property.  Unknown to JNR,

3  the  Chase Street Property had over 500 pre-existing violations

4  of local ordinances.  The building had an enormous number of

5  problems.

6    JNR tried to address these problems.  Mr. Rahmany invested

7  over $1.5 million trying to resolve the issues with the Chase

8  Street Property.  He was sued tenaciously, however, by both the

9  City of Los Angeles and by an extremely aggressive tenants

10  lawyer.

11    At several point, JNR had offers to sell the Chase Street

12  Property for enough money to have paid the mortgages against

13  this property and to recoup most of JNR's investment.  The

14  tenants, however, had filed an improper *lis pendens* against the

15  property, which prevented the sale from going forward.  As a

16  result, the Chase property was lost in foreclosure to JP Morgan

17  Chase, the holder of the first trust deed against the property.

18  B.    *Principals/Affiliates of Debtor's Business*

19    Jay Rahmany is the sole owner of JNR.

20  C.    *Management of the Debtor Before and After the Bankruptcy:*

21    Jay Rahmany has managed the Debtor, before and after the

22  bankruptcy filing.

23  D.    *Events Leading to Chapter 11 Filing*

24    JNR lost a great deal of money trying to save the Chase

25  Street Property.  It then fell behind in its mortgage payments

on the Langdon Avenue property.  To prevent that property from

being lost in foreclosure as well, this Chapter 11 was filed.

E.    *Litigation*

        Prior to the Chapter 11 filing, JNR was involved in a great

deal of litigation.  As described above, JNR was sued, both by

the City of Los Angeles and the tenants, with regard to the

Chase Street Property.  JNR was also involved in litigation with

Farmers Insurance, with regard to a number of claims which JNR

had made to recover for its losses with regard to the Chase

Street Property and other properties.

        The following is a summary of the claims and litigation in

which JNR was involved prior to the bankruptcy filing.  This

information was provided by the attorneys for JNR.


        1. JNR v. Farmers (Cumis Counsel).  This case settled at the

            Mandatory Settlement Conference.

        2. JNR v. Farmers (Chase Tenant Association).  This case settled at

            the Mandatory Settlement Conference.

        3. JNR v. Farmers.  Four separate claims were presented, and

            denied by Farmers.

        4. JNR v. Chase Street Property Tenant's Association.  This case

            was filed, and is still pending, in the Los Angeles County

            Superior Court.  It is based, among other things, upon the

            wrongful lis pendens filed by the tenants' association, which

prevented the sale of the property.   Counsel believes that the
action is well founded, and likely to result in a significant verdict
in favor of JNR.  There is little doubt that the lis pendens was
filed improperly; it was ordered expunged by the Superior Court.
There is also little doubt about the damages; this lis pendens
caused JNR to lose several potential sales of the property.

5. Chase Street Property Tenants Association v. JNR. This is a case
in Los Angeles County Superior Court.  It was concluded
successfully prior to the bankruptcy filing.  A motion for attorney
fees is pending.

6. JNR v. Milan Properties et al. This is an arbitration, by JNR
against the multiple parties responsible for the Chase Street
Property debacle.  As described above, this property had over
500 pre-existing violations of local law, at the time that JNR
purchased the property.  JNR, however, was not told about any
of this.  JNR has stated multiple causes of action against the
many prominent parties involved in this matter.  In the opinion
of counsel, JNR is likely to prevail in this case   Damages in this
case could recover all damages suffered by JNR as a result of the
fraudulent sale of the Chase Street Property to JNR. A mediation
brief with exhibits has been prepared.

*F.    Actual and Projected Recovery of Preferential or Fraudulent Transfers* None.

Zero is estimated to be realized from the recovery of fraudulent and preferential transfers.  The following is a summary of the fraudulent conveyance and preference actions filed or to be filed in this case:      none

*G.    Current and Historical Financial Conditions*

The identity and fair market value of the estate's assets are listed in Exhibit A.  Appraisals of JNR's remaining real estate assets, the Langdon Avenue property and the Houston property, are attached hereto as Exhibit B and C.  See also the Debtor's financial history set forth in Exhibit D.

III.

SUMMARY OF THE PLAN OF REORGANIZATION

A.    What Creditors and Interest Holders Will Receive Under The Proposed Plan

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority. The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive.

B.    Unclassified Claims

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired

and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code. As such, the Proponent has not placed the following claims in a class.

1.   Administrative Expenses

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code section 507(a)(1).  The Code requires that all administrative claims be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtor's  507(a)(1) administrative claims and their treatment under the Plan.

Name            Gibson Law PC

Amount Owed:    To be determined

Paid in full on Effective Date

Clerk's Office Fees

Amount:         To be determined

Paid in full on Effective Date

Office of the U.S. Trustee Fees

Amount:         To be determined

Paid in full on Effective Date

Court Approval of Fees Required:

The Court must rule on all fees listed in this chart before the fees will be owed. For all fees except Clerk's Office fees and U.S. Trustee's fees, the professional in question must file and serve a properly noticed fee application and the Court must

rule on the application.  Only the amount of fees allowed by the Court will be owed and required to be paid under this Plan.

As indicated elsewhere in this Disclosure Statement, Debtor will have $379,000 in new capital in cash on hand on the Effective Date of the Plan.

2.    Priority Tax Claims

Priority tax claims are certain unsecured income, employment and other taxes described by Code Section 507(a)(8)40.  The Code requires that each holder of such a 507(a)(8) priority tax claim receive the present value of such claim in deferred cash payments, over a period not exceeding six years from the date of the assessment of such tax.

The following chart lists all of the Debtor's Section 507(a)(8)41 priority tax claims and their treatment under the Plan:

| Description of Claim | Amount of Claim | Treatment |
|---|---|---|
| Leo Vasquez Tax Assessor-Collector P. O. Box 4622 Houston, TX 77210 | $23,462.00 | Term: 72 Months Interest Rate: 5% Monthly Payment:  $377.85 |

| | | |
|---|---|---|
| Harris County M.U.D. # 16<br><br>Bob Leared, Tax Assessor/Collectr<br><br>11111 Katy Freeway #725<br><br>Houston, TX 77079 | $19,192.72 | Term: 72 Months<br><br>Interest Rate: 5%<br><br>Monthly Payment: $309.10 |
| Los Angeles County Tax Collector<br><br>Adjusted Property Tax<br><br>P. O. Box 54018<br><br>Los Angeles, CA 90054-0018 | $39,295.33 | Term: 72 Months<br><br>Interest Rate: 5%<br><br>Monthly Payment: $632.85 |

| | | |
|---|---|---|
| Los Angeles County Tax Collector Supplemental Property Tax P. O. Box 54018 Los Angeles, CA 90054-0018 | $7472,33 | Term: 72 Months<br><br>Interest Rate: 5%<br><br>Monthly Payment: $120.34 |
| Spring ISD Tax Office Mariane C. Smith, Assessor/Collector 16717 Ella Blvd P. O. Box 904458 Houston, TX 77290 | $45,195.76 | Term: 72 Months<br><br>Interest Rate: 5%<br><br>Monthly Payment: $727.87 |

C.    Classified Claims and Interests

      1.    Classes of Secured Claims

      Secured claims are claims secured by liens on property of
the estate. The following chart lists all classes containing
Debtor's secured pre-petition claims and their treatment under
this Plan.

| CLASS# | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 1 | Secured claim of:<br><br>● Name =JP Morgan Chase<br><br>● Collateral description =8720 Langdon Ave, van Nuys, CA<br><br>● Collateral value = $1,740.000 | N | Y | Interest Only Payment for 5 years at 5% = $7250.00 Balloon Payment in the amount of $1,740,000.  In Five years. |

| | | N | Y | |
|---|---|---|---|---|
| 1 | Secured claim of:<br><br>● Name US Bank<br><br>● Collateral<br>  description = 14511<br>Falling Creek Drive,<br>Houston, TX<br><br>● Collateral value =<br>$1,400,000 | N | Y | Interest Only<br>Payment for 5<br>years at 5% =<br>$5,833.33<br>Balloon Payment<br>in the amount of<br>$1,740,000.  In<br>Five years. |

2.   Classes of Priority Unsecured Claims

Certain priority claims that are referred to in Code
Sections 507(a)(3), (4), (5), (6), and (7)51 are required to be
placed in classes. These types of claims are entitled to
priority treatment as follows: the Code requires that each
holder of such a claim receive cash on the Effective Date equal
to the allowed amount of such claim.  However, a class of
unsecured priority claim holders may vote to accept deferred
cash payments of a value, as of the Effective Date, equal to the
allowed amount of  such claims.

The following chart lists all classes containing Debtor's
507(a)(3), (a)(4), (a)(5), (a)(6), and (a)(7)52 priority

unsecured claims and their treatment under this Plan NONE

### 3. Class 3: General Unsecured Claims

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a). Class 3 consists of all of general unsecured claims, which are not placed into class 4. Class 4 consists of the following unsecured claims not in class 3 in which the creditor is essential to the continued operation of the Debtor post-plan confirmation:

All holders of Class 3 claims are given an option. They can either elect to receive a cash payment upon the Effective Date of the Plan equal to 3% of their allowed claims, or that can receive a pro rata share of the Litigation Recover (see below for definition) up to 100% of the principal amount of their claim.

### 4. Class 4: Essential Unsecured Creditors

Class 4 consists of a group of creditors holding unsecured claims whose cooperation with the Plan is essential to the success of the reorganization. Each of these creditors is providing either new credit for JNR and/or an essential service, which JNR would not be able to purchase on the open market. For further detail on which creditors are in Class 4, and for what reason, please see the Declaration of Jay Rahmany.

Class 4 consists of the following creditors:

Ascent Elevator Services

1 | Centra Partners, LLC

2 | Chikos Management

3 | Michael Harris, Esq.

4 | Daniel Hoffman

5 | Edge Commercial

6 | HB Mechanical Services

7 | Mark Rosenbloom, Esq. Wolf, Rifkin & Shapiro

8 | Michael Harris, Esq. Rogers & Harris

9 |     All holders of Class 4 claims are given an option.  They

10 | can either elect to receive a cash payment upon the Effective

11 | Date of the Plan equal to 15% of their allowed claims, or that

12 | can receive a pro rata share of the Litigation Recovery (see

13 | below for definition) up to 100% of the principal amount of

14 | their claim.

15 |        5.   Class(es) of Interest Holders

16 |     Interest holders are the parties who hold ownership

17 | interest (i.e., equity interest) in the Debtor.  If the Debtor

18 | is a corporation, entities holding preferred or common stock in

19 | the Debtor are interest holders.  If the Debtor is a

20 | partnership, the interest holders include both general and

21 | limited partners.  If the Debtor is an individual, the Debtor is

22 | the interest holder.  The following chart identifies the Plan's

23 | treatment of the class of interest holders (see Exhibit I for

24 | more detailed information about each interest holder):

25 |

| CLASS # | DESCRIPTION | IMPAIRED (Y/N) | TREATMENT |
|---------|-------------|----------------|-----------|
| 5 | Interest holders | Not impaired; claims in this class are not entitled to vote on the Plan, class is deemed to have accepted plan | Unchanged |

D.   **Means of Performing the Plan**

   1.   Funding for the Plan:

   The following will fund the Plan:

(A)   DME, LLC shall contribute $370,000 in new capital to the debtor.  The contribution shall be made via personal loan by DME, LLC to Jay Rahmany, the owner of the Debtor.  Jay Rahmany shall contribute this sum to the Debtor if the plan is confirmed.  These funds will be used to (a) pay allowed administrative expenses; (b) pay those holders of class 3 and 4 claims, who elect to receive immediate cash payments; and (b) for deferred maintenance upon the Debtor's two buildings.

(B)   Class 4 creditors shall contribute credit and/or new services to the post-plan confirmation Debtor.

   2.   Litigation and Arbitration

      JNR is presently involved in several major pieces of litigation and arbitration, as described more fully in the Disclosure Statement.  JNR believes that it will be able to recover enough money in these disputes to pay all creditors

in full.   JNR paid relatively large retainers to a number

of attorneys, prior to filing the Chapter 11 case.   These

attorneys shall continue to litigate these matters, and, to

the degree necessary, shall provide JNR with new credit in

order to complete these matters.

JNR shall have the option, in each of these cases, to

remove the case to U.S. Bankruptcy Court, or, if

appropriate, to U.S. District Court, if doing so would, in

the opinion of JNR expedite recovery.

All funds recovered in such litigation ("Litigation

Recovery") shall be distributed as follows: (a) to re-pay

the costs and reasonable attorney fees incurred in

obtaining the funds; (b) to pay those Class 3 and Class 4

creditors who elected not to receive immediate payment upon

the Plan (all such creditors shall be paid on a pro-rata

basis up to 100% of the principal amount of their allowed

claim; and (c) whatever funds remaining, after payment of

litigation costs and Class 3 and 4 claims holders, shall be

paid to JNR.

In the event that JNR wishes to settle any of these

disputes, it shall apply to the U.S. Bankruptcy Court for

authority to do so.   This authority shall be given, if the

settlement is reasonable and in the best interests of the

creditors.   Other parties in interest may be heard upon any

such applications.

3.    Post-confirmation Management    Jay Rahmany shall continue to manage the Debtor.

4.    Disbursing Agent. Jay Rahmany shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan.  The Disbursing Agent shall serve without bond and shall receive nothing for distribution services rendered and expenses incurred pursuant to the Plan.

E.    Risk Factors

The proposed Plan has the following risks:

The income from the Langdon Avenue and the Houston properties might decline.  The recovery from the litigation might be less than hoped for.

F.    Other Provisions of the Plan

1.    Executory Contracts and Unexpired Leases

a.    Assumptions

The following are the unexpired leases and executory contracts to be assumed as obligations of the reorganized Debtor under this Plan (see Exhibit C for more detailed information on unexpired leases to be assumed and Exhibit D for more detailed information on executory contracts to be assumed):

None

On the Effective Date, each of the unexpired leases and executory contracts listed above shall be assumed as obligations of the reorganized Debtor.  The Order of the Court confirming the Plan shall constitute an Order approving the assumption of each lease and contract listed above.  If you are a party to a

lease or contract to be assumed and you object to the assumption of  your lease or contract, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of  the Plan. See Section {I.B.3.} of this document for the specific date.

        b.    Rejections

        On the Effective Date, the following executory contracts and unexpired leases will be rejected:

                None

        The order confirming the Plan shall constitute an Order approving the rejection of the lease or contract.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan. See Section {I.B.3.} of this document for the specific date.

        THE BAR DATE FOR FILING A PROOF OF CLAIM BASED ON A CLAIM ARISING FROM THE REJECTION OF A LEASE OR CONTRACT IS      not applicable.  Any claim based on the rejection of a contract or lease will be barred if the proof of claim is not timely filed, unless the Court later orders otherwise.

        2.    Changes in Rates Subject to Regulatory Commission
              Approval

        This Debtor is not  subject to governmental regulatory commission approval of its rates.

        3.    Retention of Jurisdiction.

The Court will retain jurisdiction to the extent provided by law.

G.    Tax Consequences of Plan

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers about possible tax issues this Plan may present to the Debtor.  The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

The following are the tax consequences which the Plan will have on the Debtor's tax liability:

By this Plan, the Debtor will discharge close to one million dollar in debt, most of which was formerly secured against the real property.  Pursuant to Tax Code Section 108, this will not result in taxable discharge of indebtedness income, but it will result in substantial decreases in any favorable tax attributes held by the Debtor.

## IV.

## CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OR THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON

CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX.  The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm a Plan.  Some of the requirements include that the Plan must be proposed in good faith, acceptance of the Plan, whether the Plan pays creditors at least as much as creditors would receive in a Chapter 7 liquidation, and whether the Plan is feasible.  These requirements are not the only requirements for confirmation.

A.   Who May Vote or Object

1.   Who May Object to Confirmation of the Plan

Any party in interest may object to the confirmation of the Plan, but as explained below not everyone is entitled to vote to accept or reject the Plan.

2.   Who May Vote to Accept/Reject the Plan

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim which is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

a.   What Is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.

Generally, any proof of claim or interest will be allowed,
unless a party in interest brings a motion objecting to the
claim.  When an objection to a claim or interest is filed, the
creditor or interest holder holding the claim or interest cannot
vote unless the Court, after notice and hearing, either
overrules the objection or allows the claim or interest for
voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS
. A creditor or interest holder may have an allowed claim or
interest even if a proof of claim or interest was not timely
filed.  A claim is deemed allowed if (1) it is scheduled on the
Debtor's schedules and such claim is not scheduled as disputed,
contingent, or unliquidated, and (2) no party in interest has
objected to the claim. An interest is deemed allowed if it is
scheduled and no party in interest has objected to the interest.
Consult Exhibits F through L to see how the Proponent has
characterized your claim or interest.

b.    What Is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the
right to vote if it is in a class that is impaired under the
Plan. A class is impaired if the Plan alters the legal,
equitable, or contractual rights of the members of that class.
For example, a class comprised of general unsecured claims is
impaired if the Plan fails to pay the members of that class 100%
of what they are owed.

In this case, the Proponent believes that classes One, Two,

Three and Four are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Proponent believes that class Five is unimpaired and that holders of claims in each of these classes therefore do not have the right to vote to accept or reject the Plan. Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

### 3.   Who is Not Entitled to Vote

The following four types of claims are not entitled to vote: (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8)76; and (4) claims in classes that do not receive or retain any value under the Plan. Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan. Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(7) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code. Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan. EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

### 4.   Who Can Vote in More Than One Class

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

5.   Votes Necessary to Confirm the Plan

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed later in Section {IV.A.8.}.

6.   Votes Necessary for a Class to Accept the Plan

A class of claims is considered to have accepted the Plan when more than one-half (1/2) in number and at least two-thirds (2/3) in dollar amount of the claims which actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the interest-holders of such class which actually voted, voted to accept the Plan.

7.   Treatment of Nonaccepting Classes

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Code.  The process by which nonaccepting classes are forced